UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT DALE HALDEMAN, JR., | ) | CIVIL ACTION NO. 4:20-CV-1821 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.    INTRODUCTION

Plaintiff Robert Dale Haldeman, Jr., an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Page 1 of 47

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, I conclude that the Commissioner's final decision must be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On March 6, 2018, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 17; Doc. 16-2, p. 18).   In these applications, Plaintiff alleged he became disabled on October 13, 2016, when he was fifty years old, due to the following conditions: right shoulder pain; heart attack; issue with esophagus; depression; anxiety; right arm nerve damage; and right hand nerve damage. (Admin. Tr. 201; Doc. 16-6, p. 24). Plaintiff's counsel alleges that the combination of these conditions affects his ability to lift, reach, remember/memorize, complete tasks, concentrate, understand, follow instructions, and use his hands. (Admin. Tr. 212; Doc. 16-6, p. 35). At his hearing, Plaintiff amended his alleged onset date to December 3, 2017. Plaintiff has at least a high

school education. (Admin. Tr. 25; Doc. 26-2, p. 26). Before the onset of his impairments, Plaintiff worked as a machinist. (Admin. Tr. 25; Doc. 16-2, p. 26).

On November 14, 2018, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 17; Doc. 16-2, p. 18). On November 28, 2018, Plaintiff requested an administrative hearing. *Id.*

On June 26, 2019, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Richard E. Guida (the "ALJ"). *Id*. On July 17, 2019, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 27; Doc. 16-2, p. 28). On August 8, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 150; Doc. 16-4, p. 67).

On August 3, 2020, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 16-2, p. 2).

On October 6, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court reverse the final decision denying benefits and award benefits. *Id*.

Page 3 of 47

On April 16, 2021, the Commissioner filed an Answer. (Doc. 15). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 16).

Plaintiff's Brief (Doc. 17) and the Commissioner's Brief (Doc. 20) have been filed.  Plaintiff did not file a reply. This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but

more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application

Page 5 of 47

of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

      B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on July 17, 2019.

age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments

identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2);

20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of

demonstrating the existence of a medically determinable impairment that prevents

him or her in engaging in any of his or her past relevant work. 42 U.S.C. §

423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by

reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at

step five to show that jobs exist in significant number in the national economy that

the claimant could perform that are consistent with the claimant's age, education,

work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3);

*Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive

requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination.

Thus, to facilitate review of the decision under the substantial evidence standard,

the ALJ's decision must be accompanied by "a clear and satisfactory explication of

the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Conflicts in the evidence must be resolved and the ALJ must indicate which

evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff raised the following issues in his statement of errors:

(1)   Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations in Plaintiff's residual functional capacity from those impairments that the Administrative Law Judge considered to be severe including degenerative disc disease, right shoulder rotator cuff tendonitis and chronic ulnar nerve injury.

(2)   Whether the Administrative Law Judge erred and abused his discretion in failing to consider the limitations from those conditions that the Administrative Law Judge did not consider to be severe, or barely mentioned in his decision, in setting forth Plaintiff's RFC, including mental health disorders, right hip, shoulder, arm, hand and little finger pain (including a diagnosis of ulnar neuropathy and related nerve decompression surgery).

(3)   Whether the Administrative Law Judge erred and abused his discretion as it relates to Plaintiff's residual functional capacity by failing to give proper weight to the opinions of Plaintiff's treating source, Dr. Cha and Dr. Slagle, as compared to the opinions of the State Agency Consultants.

(4)   Whether the Administrative Law Judge erred and abused his discretion by failing to properly consider the Grid Rules.

(Doc. 17, pp. 1-2).

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his July 2019 decision, the ALJ found that Plaintiff would meet the insured status requirement of Title II of the Social Security Act through December 31, 2022. (Admin. Tr. 19; Doc. 16-2, p. 20). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between December 3, 2017 (Plaintiff's alleged onset date) and July 17, 2019 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 19; Doc. 16-2, p. 20).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative joint disease; right shoulder rotator cuff tendonitis; and chronic ulnar nerve injury. (Admin. Tr. 19; Doc. 16-2, p. 20). The ALJ also identified the following medically determinable non-severe impairments: hypertension; depression; and anxiety. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 21; Doc. 16-2, p. 22).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except that Plaintiff is further limited to:

> occasional push/pull right upper extremity; occasional use of right upper extremity; occasional crawl; never use ladders, rope or scaffolds.

(Admin. Tr. 21; Doc. 16-2, p. 22).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 25; Doc. 16-2, p. 26). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 25-26; Doc. 16-2, pp. 26-27). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following two representative occupations: bakery worker conveyor line, DOT #524.687-022; and usher, DOT #344.677-014. *Id*.

B.   WHETHER THE ALJ ADEQUATELY ACCOUNTED FOR PLAINTIFF'S CREDIBLY ESTABLISHED LIMITATIONS IN THE RFC ASSESSMENT

One oft-contested issue in Social Security appeals relates to the claimant's residual capacity for work in the national economy. As discussed above, a claimant's RFC is defined as "the most [a claimant' can still do despite [his or her] limitations," taking into account all of a claimant's medically determinable impairments. 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945. In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe. 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945. Although such challenges most often arise in the context of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

Page 12 of 47

Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

Plaintiff argues:

The ALJ set forth Claimant's RFC as follows: light work, with the following limitations: occasional push/pull with the right upper extremity, occasional use of the right upper extremity, occasional crawl, never use ladders, ropes or scaffolds. (Admin. Tr. 21-25). The RFC from the ALJ did not contain any non-exertional limitations. (Admin. Tr. 21-15). As will be noted below, per both Claimant's testimony and the medical records submitted in this matter, there are more significant limitations that are warranted in terms of Claimant's actual RFC.

First, Claimant's medical records demonstrate the following impairments and limitations, from those impairments the ALJ identified as severe: (1) continued right shoulder pain down to his fingers and limited range of motion, (2) pain along the right scapula making sleep difficult, (3) chronic ulnar neuropathy. (Admin. Tr. 441, 594, 625, 639 and 693).

Second, these limitations were confirmed by Claimant's testimony, as follows: (1) right shoulder loss of range of motion and pain, with trouble lifting even a gallon of water, (2) two unsuccessful rounds of PT, (3) numbness, tingling and loss of dexterity in right arm and hand, (4) the need to take breaks while doing chores, with help from his son, (5) regularly dropping things with his right hand, (6) trouble walking due to hip and back pain, (7) trouble sleeping due to pain, and (8) 45 pound weight gain due to lack of activity attributable to pain. (Admin. Tr. 39-46). It is also clear that Claimant struggled to work as long as he could, even with [sic] he returned to light duty work, due to the fact

that his pain became worse. (Admin. Tr. 36-38, 183 and 651). The ALJ failed to consider or evaluate the impact of Claimant's documented inability to sustain employment, even when unsuccessfully trying to return to work after suffering from the above-referenced impairments, as it would relate to his ability to engage in substantial gainful employment.

Based upon a close examination of Claimant's testimony and medical records, it is clear that Claimant has at least some additional exertional limitations in addition in terms of Claimant not even being capable of occasional use of right upper dominant extremity, or his uses of his hands for fingering/feeling/manipulating, due to the issues noted above, the ALJ did not consider these limitations in setting forth his RFC. In particular, the ALJ did not properly consider Claimant's need to take unscheduled breaks due to pain, limitations in his ability to remain on task less than 85% of the workday and his ability to attend work on a sustained basis, which, per the VE, would render Claimant unemployable. (Admin. Tr. 51-52). As will be noted below, these limitations were confirmed by Claimant's treating sources and medical records.

(Doc. 17, p. 15).

In response the Commissioner argues that the ALJ adequately accounted for Plaintiff's right arm pain. She argues that the other limitations Plaintiff contends were not adequately evaluated (use of his hands to finger, feel, and manipulate objects; unscheduled work breaks; and a limitation to being off task 85% of the workday) are not credibly established.

In this argument, Plaintiff essentially alleges that, if the limitations assessed by Dr. Cha had been credited, Plaintiff would have been found disabled. However,

the ALJ was not persuaded by Dr. Cha's opinion. Although Plaintiff argues that the ALJ did not properly discount Dr. Cha's opinion, as explained in Section IV.D.1. of this opinion, I was not persuaded by this argument. Accordingly, for the same reasons I am not persuaded that remand is required because the ALJ excluded certain limitations that are supported by Dr. Cha's opinion.

### C.  WHETHER THE ALJ'S FINDINGS AT STEP TWO ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii). This step is essentially a threshold test.

To be found medically determinable, an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii). This means that to be considered, an impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521; 20 C.F.R. § 416.921. A claimant's statement of symptoms, a diagnosis that is not supported by objective evidence, or a medical opinion not supported by objective evidence, is not enough

to establish the existence of an impairment. A claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect a claimant's ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present. 20 C.F.R. § 404.1529(b); 20 C.F.R. § 416.929(b). Thus, non-medically determinable impairments are excluded from an ALJ's RFC assessment.

Here, the ALJ found that Plaintiff had the following medically determinable severe and non-severe impairments: degenerative joint disease (severe); right shoulder rotator cuff tendonitis (severe); chronic ulnar nerve injury (severe); hypertension (non-severe); depression (non-severe); and anxiety (non-severe).

Plaintiff argues:

> The Administrative Law Judge erred and abused his discretion in failing to consider the effect of Claimant's mental health-related disorders or Claimant's right hip pain, right shoulder and arm pain (including a diagnosis of ulnar neuropathy and related nerve decompression surgery), right little finger and right hand numbness, all confirmed by diagnostic studies (including an abnormal EMG of the right upper extremity), which conditions are all severe in nature and cause more than a mere limitation with regards to Claimant's activities of daily living, nor did the ALJ properly consider limitations Claimant may have from these impairments, despite being confirmed by Claimant's medical records. (Admin 245-246, 256-60, 263, 265, 273, 308, 326-332, 432, 443, 507, 545, 713, 762-764, 811, 820, 859, 883, 891-894 and 903).

(Doc. 17, pp. 17).

Page 16 of 47

In response, the Commissioner argues:

Here, regarding Plaintiff's right hip pain, right shoulder and arm pain, right little finger and right hand pain and numbness, it is important to note that these are reported *symptoms*. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Governing regulations however, require Plaintiff to establish a medically determinable impairment at step two. 20 C.F.R. §§ 404.1521 ("a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or medical opinion to establish the existence of an impairment(s)"). The regulations also state that "[y]our symptoms, such as pain . . . will not be found to affect your ability to do basic work unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §§ 404.1529(b), 416.929(b).

With respect to Plaintiff's complaints of right shoulder, arm, little finger, and hand pain, the ALJ here found the underlying cause of these complaints to be severe: he specifically identified right shoulder rotator cuff tendonitis and chronic ulnar neuropathy as severe impairments (Tr. 19). The ALJ was not required to separately identify pain as a severe impairment.

As relevant for hip pain, the ALJ elsewhere noted that treating physician Dr. Slagle stated that Plaintiff was "not totally disabled[,]" although he believed that Plaintiff could no longer perform his past relevant work—a finding the ALJ agreed with (Tr. 25, 893). Dr. Slagle explained that Plaintiff's right hip complaints were "purely muscular [in] nature" and recommended "simple stretching and strengthening" (Tr. 25, 893). Indeed, his right hip showed "excellent flexion-extension [and] internal/external rotation" (Tr. 893). His hip x-rays were also normal *Id.* The ALJ explained that Dr. Slagle's statement, in combination with other opinions of record, supported a finding that Plaintiff could perform light work (Tr. 25). The record thus confirms that this pain complaint did not cause further functional limitations. The ALJ considered this as part of his RFC findings, but

the record does not establish that Plaintiff's right hip significantly limits his ability to perform basic work activities.

Lastly, the ALJ explicitly considered Plaintiff's anxiety and depression, and discussed why these conditions were non-severe when evaluating the functional domains (Tr. 20-21). The ALJ explained that Plaintiff had no limitation in his ability to understand, remember, and apply information (Tr. 20). He explained that Plaintiff was alert and oriented with normal judgment, insight, and thought content during examinations (Tr. 20, citing Ex. 4F, 8F, 17F; *see e.g.* Tr. 431— "denies feeling depressed today. States that his Paxil adequately controlled his mood[,]"Tr. 554-55, Tr. 903-04—noting "well controlled" depression and "good management of mood with Paxil", Tr. 907—normal mood, affect, behavior, judgment, and thought content). He cited mental status findings where Plaintiff had coherent and goal directed thought process with intact recent and remote memory (Tr. 20, citing Ex. 8F/Tr. 555). He further explained that Plaintiff did not need special reminders to complete tasks, showing an ability to remember things and that he could pay bills, manage money, and handle back accounts (Tr. 20, citing Ex. 5E/Tr. 209).

The ALJ found mild limitation in Plaintiff's ability to interact with others (Tr. 20). He explained that Plaintiff's anxiety and depression can trigger symptoms when he is in situations with unfamiliar people (Tr. 20, citing Ex. 8F). However, he noted that Plaintiff does not have problems getting along with family, friends, neighbors, or those in positions of authority, and has never been fired or laid off from a job due to problems getting along with others (Tr. 20, citing Ex. 5E/Tr. 211).

The ALJ found mild limitation in concentration, persistence or maintaining pace (Tr. 20). He noted Plaintiff's complaints that he cannot finish what he starts and does not follow instructions well (Tr. 20). However, he explained that this was inconsistent with the record showing that he had intact attention and concentration on examination, could perform simple calculations and serial sevens, pay

bills and use a checking account (Tr. 20, citing e.g. Ex. 8/Tr. 555; *see also* Tr. 707, 711, 716, 907).

Lastly, the ALJ found that Plaintiff had no limitation in the domain of adapting and managing oneself (Tr. 21). He observed that while Plaintiff takes medication for his mental health symptoms, records indicate that medication controls his symptoms (Tr. 21), citing Ex. 17F/Tr/ 903-04). Plaintiff reported being able to care for his personal needs, care for his dogs, prepare various meals, go out alone, and operate a motor vehicle (Tr. 21, citing Exs. 5E and 8F/Tr. 208-210, 555).

The ALJ thus explained that because Plaintiff's medically determinable mental impairments did not cause more than mild limitations in any functional domain, he found the conditions to be non-severe (Tr. 21). *See also* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe).

Plaintiff has not cited to any record evidence that warrants a different result. Plaintiff essentially asks the Court to re-weigh the evidence. But, it is not the Court's role to re-weigh the evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). (reviewing courts "are not permitted to reweigh the evidence or impose their own factual determinations.").

Substantial evidence supports the ALJ's step two finding and the Court should affirm.

(Doc. 20, pp. 7-10).

To the extent Plaintiff argues that the ALJ erred by finding Plaintiff's impairments of depression and anxiety not medically determinable, I am not persuaded. As noted by the Commissioner, the ALJ found that Plaintiff's

impairments of depression and anxiety were medically determinable but non-severe.

With respect to Plaintiff's argument that the ALJ failed to consider his hip pain to be a medically determinable impairment, I am not persuaded. Plaintiff is correct that he raised the issue of his hip pain during the hearing (Admin. Tr. 45-46), and that the ALJ did not discuss the hip impairment during the step two analysis. However, the ALJ noted in a different section of the decision that "Dr. Slagle also noted that the 'low back and right hip pain is purely muscular in nature.'" (Admin. Tr. 25). The medical record in this case suggests that Plaintiff experienced low back and hip pain "while trying to unload the dishwasher" in 2019, that the pain "slowly eased up and got better" over a three week period, on examination Plaintiff had "excellent" flexion and extension in his injured hip and was able to forward flex and touch his toes, no straight leg raising, no history of disc herniation or radiculopathy, and normal x-rays. (Admin. Tr. 893). Plaintiff's orthopedist recommended a stretching and strengthening program. *Id.* No formal diagnosis was given. Plaintiff was directed to follow up in three months—*after* Plaintiff's administrative hearing. *Id.* The ALJ considered this treatment record in the decision. Furthermore, Plaintiff has not cited to any evidence that the ALJ's failure to discuss the hip pain at step two resulted in harm. Remand is not required

unless there is reason to believe that it might lead to a different result. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *see also Snedeker v. Colvin*, No. 3:13-CV-970, 2015 WL 1126598 at *7 (N.D. N.Y. Mar. 12, 2015) ("a reviewing court must reverse and remand when an administrative law judge errs when reaching a decision, unless, as a matter of law, the result could not be affected by the error. In other words, administrative legal error is harmless when a reviewing court confidently concludes that the same result would have been reached had the error not occurred.") (internal citations omitted). Accordingly, I am not persuaded that remand is required for further consideration of Plaintiff's hip pain.

Next, Plaintiff argues that the ALJ failed to identify Plaintiff's shoulder pain, arm pain, right little finger numbness, and right hand numbness as medically determinable impairments. Plaintiff is correct that these conditions were not identified as *diagnoses* at step two. However, even if this was considered to be an error, he has cited no evidence that suggests this error resulted in harm. The ALJ found Plaintiff to have medically determinable severe impairments of right shoulder rotator cuff tendonitis and chronic ulnar nerve injury. Plaintiff's shoulder pain, arm pain, finger numbness, and hand numbness were all evaluated in the context of the medically determinable shoulder and elbow conditions. Accordingly,

I am not persuaded that remand is required for further evaluation of the shoulder pain, arm pain, right little finger numbness, or right hand numbness.

D.   WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION EVIDENCE OF RECORD

The Commissioner's regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the following abilities:"

(i)   [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii)   [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)   [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)   [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2); 20 C.F.R. § 416.913(a)(2). A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within

the scope of practice permitted under State of Federal Law, or an individual who is certified by a States as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law. 20 C.F.R. § 404.1502(d); 20 C.F.R. § 416.902(d). If one medical source submits multiple medical opinions, and ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis. 20 C.F.R. § 404.1520c(b)(1); 20 C.F.R. § 416.920c(b)(1).

An ALJ's consideration of competing medical opinions is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. §

416.920c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 416.920c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

1.     Whether the ALJ Properly Evaluated Dr. Cha's Opinion

On May 1, 2019, treating source Bede Cha, DO ("Dr. Cha") completed a check-box type RFC questionnaire. (Admin. Tr. 908-913). In that questionnaire, Dr. Cha identified Plaintiff's diagnoses as: (1) right shoulder rotator cuff tendonitis status post tuberosity fracture due to fall at work; and (2) chronic ulnar nerve neuropathy also due to fall at work. Dr. Cha assessed that Plaintiff could: sit for up to 45 minutes at one time, and sit for less than two hours total per eight-hour workday; stand for 45 minutes at one time; "stand/walk" for less than two hours total per eight-hour workday; occasionally lift and carry up to ten pounds; rarely look down, turn his head left or right, look up, hold his head in a static position, twist, stoop, crouch/squat, climb ladders, or climb stairs; would be unable to use his right hand or right fingers for more than twenty-five percent of the workday; and would be unable to use his right arm to reach for more than ten percent of the workday. *Id.* Dr. Cha also assessed that Plaintiff needs an unscheduled 10-minute break every 45 minutes, needs to elevate feet above the level of heart for 25% of the workday, would be absent about four days per month, and would be off task more than fifteen percent of the workday. *Id.*

In his decision, the ALJ found that Dr. Cha's opinion was not persuasive. In doing so, the ALJ explained:

Page 25 of 47

In contrast, the May 1, 2019 opinion of primary care provider, Bede Cha, DO, is not persuasive (Exhibit 18F). On a logical basis, many of Dr. Cha's opined limitations, including in the areas of sit/stand/walk, have no connection to the loss of functionality to the right upper extremity. It is also not clear why the right upper extremity impairment would cause a need to elevate the leg to heart level for 25% of the workday. More significantly, Dr. Cha's opinion is not supported by the treatment record including the examinations (e.g. Exhibit 16F/8) and opinion of the treating orthopedic provider, Dr. Slagle. Also, Dr. Cha's examinations reveal no objective abnormalities to support his opined limitations (Exhibit 12F/43, 52; 17F/9).

(Admin. Tr. 25).

Plaintiff argues:

The ALJ assigned limited weight to the opinions from Claimant's treating source, Dr. Cha, his primary care physician with Wellspan Family Practice, who had treated Claimant every 3 to 7 months since March 15, 2018. (Admin. Tr. 21-22 and 908-913). Dr. Cha's opinions were not properly weighed by the ALJ using the factors under 20 C.F.R. § 404.1527 or 20 C.F.R. § 404.1520(c). The ALJ also failed to explain his analysis of Dr. Cha's limitations in the Residual Functional Capacity he completed, despite the fact that it set forth specific limitations with explanation, resulting from actual observations, diagnoses and treatment, as noted by Dr. Cha. (Admin. Tr. 908-913).

(Doc. 17, p. 22).

In response, the Commissioner argues:

Plaintiff argues that Dr. Cha's opinion was "not properly weighed by the ALJ using the factors under 20 C.F.R. § 404.1527" (Pl.'s Br. at 22). But that regulation does not apply here. The ALJ explained that many of Dr. Cha's opined limitations, including his proposed sit,

stand, and walk limitations and the need to elevate Plaintiff's legs, had "no connection to loss of functionality to the right upper extremity"— the central impairment in this case (Tr. 25). The ALJ also stated that Dr. Cha's examinations "reveal no objective abnormalities to support his opined limitations" (Tr. 25, citing Ex. 12F at 43, 52; 17F at 9/Tr. 702, 711, 906—showing "mild" tenderness in the right shoulder, full 5/5 strength "bilaterally" and a 5/5 grip strength). In other words, Dr. Cha did not provide support for many of his proposed limitations (Tr. 28, 908-913). The ALJ also explained that the opinion was inconsistent with the longitudinal treatment record and Dr. Slagle's opinion (Tr. 25). Plaintiff notably has not cited to any evidence that supports or is consistent with Dr. Cha's opinion (Pl.'s Br. at 22).

(Doc. 20, pp. 22-23).

As an initial matter, the Commissioner is correct that 20 C.F.R. § 404.1527 does not apply in this case, therefore I am not persuaded that remand is required to apply this regulation.

Next, Plaintiff argues that the ALJ did not properly explain his consideration Dr. Cha's opinion based on the factors outlined in 20 C.F.R. § 404.1520c. That regulation requires that the ALJ explain his or her consideration of both "consistency" and "supportability." It provides that, "[t]he more *consistent* a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." 20 C.F.R. § 404.1520c(c)(2) (emphasis added); 20 C.F.R. § 416.920c(c)(2).

On the issue of "supportability," the regulation provides that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1).

In *Cotter v. Harris*, the Third Circuit recognized that there is "a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." 642 F.2d 700, 706 (3d Cir. 1981). In defining the parameters of this obligation, the Circuit explained:

> [i]n our view and examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Id.* at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). In its opinion denying a rehearing in *Cotter*, the Circuit further elaborated that "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481 (3d Cir. 1981).

Page 28 of 47

In his decision, the ALJ explained that "Dr. Cha's opinion is not supported by the treatment record including the examinations (e.g. Exhibit 16F/8) and opinion of the treating orthopedic provider, Dr. Slagle." Although this explanation did not use the word consistency, it is clearly an application of the consistency factor as defined in the regulations and is supported by some evidence—the April 3, 2019 "treatment record"/ "opinion" by Dr. Slagle. This treatment record suggests that, although Plaintiff reported some back pain, it was believed to be muscular issue, and thus is not related any of the medically determinable severe impairments at issue here. I find that the ALJ's consideration and explanation of the consistency factor is adequate.

In his decision that ALJ also adequately addressed and explained his consideration of the supportability factor. The ALJ reasoned that Dr. Cha did not explain the basis for the standing, walking and leg elevation limitations, and that Dr. Cha's opinion was not supported by his own treatment notes. The ALJ cited several specific treatment records to support this analysis. (Admin. Tr. 702) (noting only mild tenderness in Plaintiff's right shoulder, no observations noted about lower extremities); (Admin. Tr. 711) (noting hypertonic musculature at upper thoracic T1 to T3, no observations noted about lower extremities); (Admin. Tr. 906) (noting no observations about lower extremities). The absence of any reported

Page 29 of 47

leg pain or difficulty standing and walking supports the ALJ's assessment. Plaintiff has not cited any evidence that was ignored or mischaracterized by the ALJ that undermines the ALJ's conclusion.

Accordingly, I am not persuaded that remand is required for further evaluation of Dr. Cha's opinion.

>       2.      Whether the ALJ Properly Evaluated Dr. Slagle's Opinion

On April 3, 2019, treating source Richard Slagle, M.D. ("Dr. Slagle") wrote the following treatment note:

> Patient with chronic ulnar nerve injury and right shoulder rotator cuff tendonitis. That remains unchanged. He is in the process of trying to get disability. Unfortunately his main reason for coming today was to obtain forms to be completed so that he may continue with insurance coverage until his disability hearing. Is also no[w] complaining of some back and leg pain. This occurred while trying to unload the dishwasher. He bent over and felt spasm in the back and for 2 days could not bend over. It has slowly eased up and gotten better over the last 3 weeks. He has no numbness or tingling in extremity. He does note some pain down the leg right side. It has slowly improved. He has no prior history of disc herniation or radiculopathy.

> Exam today of the right upper extremity is essentially with paresthesias particularly in the little finger. And pain with forward elevation abduction of the shoulder. The right hip shows excellent flexion-extension internal/external rotation mellitus seem to complaint of some groin pain on those maneuvers. He has no straight leg raising. He has no paresthsias in the right lower extremity. There is no swelling or edema. He has normal motor strength. He can forward flex to touch his toes extend and lateral bend with minimal discomfort.

X-rays of the right hip were normal.

Chronic ulnar neuropathy of the right upper extremity and rotator cuff tendonitis. Certainly the nerve I believe will be a permanent injury without change. He is still filing for disability as a result of that. As I discussed with him he is not totally disabled but he certainly cannot return to his prior place of employment or prior employment activity. The low back and right hip is purely muscular nature and again recommend simple stretching and strengthening program. He will follow-up in roughly 3 months. Again he is disability hearing in June and is hoping to resolve current situation.

(Admin. Tr. 893).

In his decision, the ALJ found that Dr. Slagle's "opinion" was "persuasive."

In doing so, the ALJ explained:

Likewise, the April 3, 2019 opinion of the treating orthopedic provider, Richard Slagle, MD, is persuasive (Exhibit 16F/8). Dr. Slagle wrote that "as I discussed with him he is not totally disabled but he certainly cannot return to his prior place of employment or prior employment activity" (Id.). Dr. Slagle also noted that the "low back and right hip is purely muscular in nature" (Id.). In combination with the opinion of the state agency medical consultant, Dr. Ritner, the residual functional capacity reflects Dr. Slagle's opinion. Specifically, the claimant has functional limitation to his right upper extremity, but he still retains functionality within the moderate limitations of the light exertional level based residual functional capacity. Dr. Slagle is a treating provider within the relevant specialty.

(Admin. Tr. 24-25).

Plaintiff argues:

The ALJ also improperly hand-picked through the opinions and records from Dr. Slagle, in order to focus on only those statements

from Dr. Slagle's that supported his RFC, as opposed to considering Dr. Slagle's records and opinions as a whole, which clearly supported more significant limitations that [sic] those noted by the ALJ in Claimant's RFC. (Admin. Tr. 894-896). Specifically, the ALJ states that the opinions of Dr. Slagle are persuasive, and then the ALJ only refers to portions of the opinions of Dr. Slagle as supportive of the ALJ's findings regarding Claimant's RFC without then making reference to other parts of Dr. Slagle's records/ findings, including his opinions that Claimant has permanent issues with his right upper extremity, which will not resolve with surgery, and which limit his ability to perform work activities, with a notation of significant intrinsic wasting in his right upper extremity. (Admin. Tr. 587 and 894-896). The actual findings and opinions set forth by Dr. Slagle are supportive of a finding that Claimant either has more significant limitations that [sic] those noted by the ALJ in terms of Claimant's RFC, or that Claimant is unable to engage in sustained work activity due to significant limitations in regards to his ability to work.

(Doc. 17, pp. 22-23).

In response, the Commissioner argues:

Plaintiff also argues that the ALJ "hand-picked through the opinions and records from Dr. Slagle" and does not refer to the portion of his opinion that Plaintiff has permanent impairment of his right upper extremity that will not resolve with surgery (Pl's Br. at 23). Plaintiff is both legally and factually incorrect. As discussed above, when evaluating opinions under the new regulations, and ALJ is not required to articulate how he considered each opinion or finding therein. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Moreover, the ALJ explicitly noted Dr. Slagle's statement that Plaintiff's "conditions will likely be permanent and without change" (Tr. 23, citing Ex. 16F at 9/Tr. 894). He also cited Dr. Slagle's opinion that Plaintiff could not return to his prior work—a finding the ALJ agreed with as he too found Plaintiff could no longer perform his past relevant work as a machinist (Tr. 24-25). Yet, the ALJ correctly noted that despite these facts, Dr. Slagle ultimately concluded that Plaintiff "is not totally

disabled" and thus does not have wholly work-preclusive limitations (Tr. 24-25). The ALJ reasonably found that Dr. Slagle's conclusions do not warrant further restriction.

(Doc. 20, pp. 23-24).

Plaintiff argues that the ALJ improperly ignored an October 26, 2018 treatment note by Dr. Slagle. That treatment record provides that:

Patient with the right arm pain and paresthesias. Follows up after EMG nerve conduction velocity studies which did not confirm chronic ulnar nerve involvement of the first dorsal interosseous muscle. So is both sensory and motor involvement of the ulnar nerve. He continues to complaint of weakness and discomfort. He is tolerating pain.

Exam of the right arm shows his incision over the cubital tunnel region. Still has paresthesias in the ulnar digits. He has good range of motion of all digits. He has negative Froment's. There is significant intrinsic wasting. There is good capillary refill. 2+ radial pulse.

Right ulnar nerve injury. At this point is more than a year out since his injury and surgery. I do not believe that the nerve injury will improve. I also do not believe further surgery to attempt to decompress the nerves will be of any advantage. Think this is a permanent injury that will be left with. We can continue to follow and observe. We did discuss disability at least for the right upper extremity which will most likely be permanent. However I do not believe it will be progressive. He will follow-up in 3 months.

(Admin. Tr. 587). Plaintiff argues that this treatment note establishes that Plaintiff's shoulder injury results in greater limitations than assessed by the ALJ. I am not persuaded. As discussed above, the ALJ found that Plaintiff would be

Page 33 of 47

limited to "occasional" use of his right shoulder and arm, with "occasional" understood to be two hours or less per workday. Although the treatment record suggests that Plaintiff's shoulder injury is permanent, and that Plaintiff has suffered from some muscle wasting, the note does not discuss any specific functional limitations that contradict the ALJ's RFC assessment.

Accordingly, I am not persuaded that remand is required because the ALJ did not address the October 26, 2018 treatment note.

### 3. Whether the ALJ Properly Evaluated Opinions by the State Agency Consultants

Two state agency consultants (Dr. Williams and Dr. Ritner) issued opinions as part of the initial review of Plaintiff's applications. A consultative examiner (Dr. Trogner) also completed a medical source statement.

On October 23, 2018. Stacy Trogner, Psy.D. ("Dr. Trogner") examined Plaintiff. Following the examination, Dr. Trogner wrote a narrative report and completed a check-box medical source statement. (Admin. Tr. 552-559). Dr. Trogner diagnosed Plaintiff with adjustment disorder with depressed mood and generalized anxiety disorder. (Admin. Tr. 555). In the medical source statement, Dr. Trogner was asked to rate Plaintiff's ability to perform certain tasks or activities based on the following scale: none; mild (slightly limited); moderate (fair

ability); marked (seriously limited); and extreme (no ability). Dr. Trogner assessed that Plaintiff would have no difficulty performing the following activities: understanding and remembering simple instructions; carrying out simple instructions; making judgments on simple work-related decisions; interacting with the public; interacting with supervisors; interacting with co-workers; and responding to usual work situations and changes in a routine work setting. (Admin. Tr. 557-558). Dr. Trogner assessed that Plaintiff would have "mild" limitations in the following activities: understanding and remembering complex instructions; carrying out complex instructions and making judgments on complex work-related decisions. *Id.* Dr. Trogner assessed that Plaintiff had no moderate, marked or extreme limitation in any activity assessed.

On October 25, 2018, Dr. Williams completed a psychiatric review technique or "PRT" assessment. Dr. Williams assessed that Plaintiff had: no difficulty understanding, remembering or applying information; mild difficulty interacting with others; mild difficulty concentrating, persisting or maintaining pace; and no difficulty adapting or managing himself. (Admin. Tr. 61). In support of that assessment Dr. Williams explained:

> The claimant is a 52-year old male with allegations of serious medical and mental issues that he feels impair his ability to work. He last worked in 12/17 but feels he was let go due to his physical limitations.

HE has never been in any professional mental health treatment so a full mental status exam was conducted by Dr. Trogner. At the exam the claimant endorsed symptoms of depression and anxiety with no suicidal ideations, thought disorder, trauma issues, or manic symptoms. At the exam the claimant presented as well groomed and appropriately dressed, speech was fluent and clear, though processes were coherent and goal directed, the claimant was alert and well oriented, attention and concentration as well as memory functioning were all intact, and cognitive functioning was considered average. The claimant is mentally capable of performing ADL's adequately and independently but has some physical limitations. The MSO of Dr. Trogner is that the claimant rated as "None" to "Mild" impairment on all areas of Form 164. Although this claimant does have some mental issues, the medical data in the file does not establish a severity level of mental impairment that would prohibit completion of tasks. The allegations of the claimant are viewed as partially consistent.

(Admin. Tr. 61).

In his opinion, the ALJ found that Dr. Williams' and Dr. Trogner's opinions were "persuasive." In doing so, the ALJ explained:

The undersigned considered the opinion of Richard W. Williams, Ph.D., a state agency consultant. On October 25, 2018, Dr. Williams determined that the claimant has mild limitations in his ability to interact with others and to concentrate, persist, and maintain pace, but no limitations in his ability to understand, remember, or apply information and to adapt or manage himself (Exhibit 1A; 2A). The undersigned also considered the opinion of Stacy Trogner, Psy.D., a state agency consultant. On October 23, 2018, Dr. Trogner determined that the claimant had mild limitations in his ability to understand, remember, carry out complex instructions and make judgments on complex work related decision, but no limitations in his ability to understand, remember, carry out simple instructions and make judgments on simple work related decision, interact with others, concentrate, persist, or maintain pace, and adapt or manage himself

(Exhibit 8F). To the extent that the opinions find that the claimant has nonsevere mental health impairments, they are supported by the record which shows that the claimant's conditions are controlled with oral medication and that he did not require inpatient or outpatient therapy to treat his conditions. Primary care provider examinations note normal psychiatric findings (e.g. 17F/10). Therefore these opinions are persuasive.

(Admin. Tr. 24).

On November 14, 2018, Dr. Ritner completed a physical RFC assessment as part of the initial review of Plaintiff's applications. (Admin. Tr. 63-65). Dr. Ritner assessed that Plaintiff could: occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry up to ten pounds; stand and/or walk up to six hours per eight-hour workday; sit for six hours per eight-hour workday; occasionally crawl and reach with his right arm; and never climb ropes, ladders, or scaffolds. Dr. Ritner also assessed that Plaintiff had no limitations in handling, fingering or feeling, but did require a medically necessary hand-held assistive device for ambulation. In support of his decision, Dr. Ritner explained:

> Clmnt w/ allegations of RUE pain / nerve damage. Imaging shows past R humerus fracture w/ routine healing. Clmnt s/p Ulnar Nerve Decompression, CLmnt [sic] w/ continued loss of sensation. EMG's reveal acute / subacute ulnar nerve entrapment / neuropathy at or about the R elbow affecting the myelin / axons of the motor nerve fibers. On Exam Clmnt is able to do full ROM to the neck, some discomfort along the R trapezius. He can shrug shoulders, has good ROM in the shoulders and can raise arms overhead.

Clmnt alleges Heart Attack. At Pre-OP cardio Exam Clmnt complained of no Cardiac symptoms, EKG was slightly abnormal, Clmnt w/ good exercise tolerance, Considered a Low nonmodifiable risk of cardiac complications. ECG showed EF at 65%. No indication of heart attack in file. US of Aorta shows ectasia of proximal abdominal aorta measuring 2.8 cm. Clmnt w/ Hypertension, treated with oral medication. No indication of end organ damage. Minimal Impairment.

Clmnt alleged difficulty with esophagus. Fluoroscopy esophagram shows Moderate gastroesophageal reflux. ADL's are not significantly limited by this impairment. No specialist visits, no ER or Urgent care visits for this impairment. Minimal Impairment.

(Admin. Tr. 65).

In his decision, the ALJ found that Dr. Ritner's opinion was persuasive. In doing so, he explained:

The undersigned considered the opinion of Carl Ritner, D.O., a state agency consultant. On November 14, 2018, Dr. Ritner determined that the claimant was capable of performing light work, except that he may occasionally crawl, but is limited in his ability to reach overhead with his right extremity and must never climb ladders, ropes, or scaffolds (Exhibit 1A; 2A). This opinion is consistent with the medical evidence of record that shows that, despite the claimant's conditions, he maintained a good range of motion of his shoulder and five out of five strength in his right upper extremity. Therefore, this opinion is persuasive. However, the residual functional capacity contains additional limitations on the use of the right extremity due to recent reported pain in the right upper extremity (Exhibit 16F/8).

(Admin. Tr. 24).

Plaintiff argues:

> The State Agency Consultants upon which the ALJ relied upon in setting forth Claimant's RFC referred their opinions without the bulk of the medical records in this matter, and without examining Claimant. (Admin. Tr. 24). Further, the ALJ assigned persuasive weight to the opinions of the State Agency Consultants without citing to support of how their opinions are supported by the record in this matter. (Admin. Tr. 24).

(Doc. 17, pp. 23-24).

In response, the Commissioner argues:

> Lastly, Plaintiff suggests that the ALJ did not explain how the prior administrative medial [sic] findings were supported by the record (Pl.'s Br. at 24). Again, Plaintiff does not cite to any record evidence that undermines the ALJ's finding here. *Id.* As the ALJ explained, Dr. Ritner opined that Plaintiff could perform light work with occasional overhead reaching (Tr. 24). Dr. Ritner cited medical evidence to support his conclusion (Tr. 65). The ALJ explained that this opinion was consistent with the medical evidence showing that Plaintiff's conditions "are not treatable and cause pain, numbness, and tingling of his right upper extremity" but "despite his conditions, he maintained a good range of motion of his shoulder and five out of five strength in his right upper extremity" (Tr. 24; *see also* Tr. 23, citing Ex. 13F at 43, 14F at 30, 37; 16F at 9; 17F at 9/Tr. 764, 820, 827, 894, 906). The ALJ also explained that this opinion was generally consistent with Dr. Slagle's statement that despite some impairment, Plaintiff was not totally disabled (Tr. 24-25).

> Plaintiff suggests that the ALJ could not rely on Dr. Ritner's opinion because the he [sic] did not review the entire record (Pl.'s Br. at 24). But the Third Circuit has explained that unless the ALJ finds that subsequent evidence would change a state agency expert physician's opinion, the ALJ may rely on that expert's opinion. *Chandler*, 667 F.3d at 361 ("[T]here is always some time lapse between the

consultant's report and the ALJ hearing and decision"). That is precisely what happened here. The ALJ went on to add additional right arm restrictions beyond those opined by Dr. Ritner: instead of just limiting Plaintiff to occasional overhead reaching, he instead further restricted Plaintiff to no more than occasional use of the entire right extremity "due to recent reported pain" (Tr. 21, 24).

(Doc. 20, pp. 24-25).

Plaintiff argues that the ALJ erred by finding the opinions by Doctors Williams, Ritner, and Trogner persuasive because: (1) the sources did not have access to the full record when they issued their decisions; and (2) the ALJ did not adequately explain why these opinions were credited because he did not cite to the record.

With respect to the first issue, I am not persuaded that remand is required merely because the state agency consultant and consultative examiner opinions were issued early in the application process. As other courts have observed, an ALJ is entitled to rely upon the findings of an agency consultant or consultative examiner even if there is a lapse of time between the report and the hearing. *Chandler v. Astrue*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."); *Richabaugh v. Berryhill*, 271 F. Supp.3d 721, 737 (D. Del. 2017). The passage of time, without more, is not an adequate basis to

require remand. *See e.g. Grimes v. Colvin*, 2016 WL 246963 at *2-3 (W.D. Pa. Jan 21, 2016) (remanding where an ALJ relied on a 16-month-old medical opinion issued in 2012 that was issued before a significant deterioration in the claimant's condition that occurred after claimant was injured in a motor vehicle accident). Plaintiff does not allege that his condition significantly deteriorated after these opinions were issued.

With respect to the second issue, that the ALJ did not cite to evidence in support of his decision to credit the state agency consultant and consultative examiner opinions, I am not persuaded.

In support of his decision to credit the opinions about Plaintiff's mental limitations by Doctors Williams and Trogner, the ALJ noted that Plaintiff had never sought inpatient or outpatient treatment or therapy from a mental health provider, and cited to an April 30, 2019 treatment record form Plaintiff's primary care physician noting that Plaintiff had "normal mood and affect. His behavior is normal, Judgment and thought content normal." (Admin. Tr. 907). This evidence is substantial. Plaintiff has cited to no evidence that contradicts the ALJ's conclusion. Accordingly I am not persuaded that remand is required for further evaluation of the opinions of Doctors Williams and Trogner.

In support of his decision to credit the opinion of Dr. Ritner, the ALJ noted that Plaintiff had a good range of motion in his shoulder, and five out of five strength in his upper right extremity. Plaintiff is correct that the ALJ did not cite any specific portion of the record in the paragraph addressing Dr. Ritner's opinion supporting the rationale that Plaintiff had full strength in his upper right extremity. The ALJ did, however, provide the following detailed summary of Plaintiff's treatment history:

> The record establishes that the claimant has a history of degenerative joint disease, right sided rotator cuff tendonitis, and ulnar nerve injury. The record indicates that the claimant suffered a right shoulder fracture while at work, which required him to undergo physical therapy to treat the condition (Exhibit 3F at 36). Thereafter, the claimant began experiencing relief in his right shoulder, but began to experience pain in his right elbow along with numbness and weakness (Exhibit 3F at 36). In June 2017, the claimant underwent cubital tunnel surgery, which helped to improve the symptoms of numbness and weakness that he was experiencing in his fourth and fifth digits (Exhibit 3F at 4; 4F at 36). Following the surgery, the claimant began physical therapy to work on his elbow range of motion, strength, and overall function (Exhibit 3F at 34). During physical therapy, treatment notes indicate that the **claimant's strength in his elbow and forearm improved to a five out of five** and his grip strength was 106/112 (Exhibit 3F at 8). In addition, **the claimant's range of motion at his elbow was 1-145 degrees, his forearm supination was at 88 degrees, and his pronation was at 90 degrees** (Exhibit 3F at 8). In March 2018, the claimant reported that he could function well despite his right shoulder pain and weakness (Exhibit 4F at 35). At the time, it was noted that the claimant displayed tenderness to palpation at the superior aspect of his right shoulder (Exhibit 4F at 38). It was also noted that his right upper extremity shoulder range of motion was

limited due to pain (Exhibit 4F at 38). Despite this, he maintained **five out of five upper extremity strength and five out of five grip strength on the right side** (Exhibit 4F).

In September 2018, the claimant reported pain that began over his right shoulder and radiated down to his fingers (Exhibit 4F at 45). Examination revealed that he had a positive Hawkins test on the right side and positive Tinel's at his right elbow (Exhibit 4F at 47). Despite this, **he continued to maintain five out of five strength in his upper extremities** (Exhibit 4F at 52). Moreover, x-ray imagining [sic] of the claimant's right shoulder revealed that there was no abnormal findings (Exhibit 13F at 23). Notably, his treatment provider recommended only conservative treatment, indicating that the claimant's shoulder could be treated with a stretching program (Exhibit 14F at 22). In October 2018, the claimant continued to report right shoulder pain that radiated into his neck and back of his head (Exhibit 13F at 46). At the time, he also reported numbness in his fourth and fifth fingers (Exhibit 13F at 46). Examination reviewed that he had tenderness to his lateral right paracervical area with positive muscle spasms alone his right trapezius and posterior shoulder (Exhibit 13F at 43). However, the record also indicated that **he maintained a normal range of motion in his neck and shoulders, could raise his arms overhead, and that his biceps and triceps were intact** (Exhibit 13F at 43; 14F at 30). Nerve conduction studies completed the same month confirmed chronic ulnar nerve injury with involvement of the first dorsal interosseus muscle (Exhibit 14F at 37). While the claimant continued to report pain, treatment notes from the time indicate that further surgery would not be of advantage (Exhibit 14F at 37).

In January 2019, it was noted that the claimant's right ulnar nerve injury was stable and unchanging (Exhibit 16F at 9). At the time, the claimant was still experiencing numbness and tingling in his right hand (Exhibit 16F at 9). In addition, he continued to report pain in his right shoulder (16F at 9). Therefore, it was recommended that he undergo physical therapy to treat the conditions (Exhibit 16F at 9). Physical therapy provided some relief of his pain symptoms (Exhibit 16F at 9). Despite his conditions, **he continued to maintain a good**

**range of motion in his shoulder** (Exhibit 16F at 9). While treatment records from April 2019 indicate that the conditions will likely be permanent and without change, his treatment provider noted that the claimant is not totally disabled (Exhibit 16F at 8). **He was noted to have some mild tenderness and a restricted range of motion, but his range of motion was still within normal limits** (Exhibit 17F at 9). Treatment records also that [sic] **he maintained five out of five strength in his bilateral upper extremities at shoulder, elbow, and grip** (Exibit 17F at 9).

(Admin. Tr. 22-23) (emphasis added). I find that the ALJ's decision as a whole cites to sufficient evidence in the record to support his rationale that Plaintiff had five out of five strength and a good range of motion. *See Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004); *Stancavage v. Saul*, 469 F.Supp.3d 311, 325 (M.D. Pa. 2020). Accordingly, I am not persuaded that remand is required for further consideration of Dr. Ritner's opinion.

E.    WHETHER THE ALJ PROPERLY APPLIED THE GRIDS AT STEP FIVE

At step five of the sequential evaluation process, the ALJ found that:

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are

used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as (1) bakery worker conveyor line (DOT #524.687-022) which is light, unskilled work with an SVP of 2 for which there are 38,000 jobs in the national economy; and (2) usher (DOT #344.677-014), which is light, unskilled work with an SVP of 2 for which there are 56,000 jobs in the national economy.

The vocational expert indicated that for these two sample occupations (bakery worker, usher), the Dictionary of Occupational Titles indicates a frequently level for upper extremity functions without distinguishing between the two upper extremities. In the instant case, the residual functional capacity has an occasional limitation on the right upper extremity and no limitation on the left upper extremity. The vocational expert testified that based on his experience, the two sample occupations can be performed within the residual functional capacity.

Pursuant to SSR –4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles except in areas

such as upper extremity usage and tolerances for which the vocational expert explained his testimony.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(Admin. Tr. 25-26).

Plaintiff argues:

The ALJ erred and or abuse [sic] his discretion in failing to properly consider the Grid Rules, in light of Claimant's age (51 on his amended alleged onset date), the significant limitations in the use of his dominant right upper extremity, and in light of the transferability of skills to jobs at the sedentary exertional level, if they had been properly considered with non-exertional limitations that were ignored by the ALJ, despite evidence that Plaintiff's mental-health impairments result in unskilled work. *Code of Federal Regulations, Appendix 2 to Subpart P of Part 404*.

(Doc. 17, p. 24).

In response, the Commissioner argues that the ALJ properly evaluated Plaintiff's application at step five, using the Grids as a framework. (Doc. 20, pp. 25-28).

I am not persuaded by Plaintiff's argument. Plaintiff essentially argues that the ALJ should have limited Plaintiff to sedentary work, and that if the ALJ had

Page 46 of 47

done so, Plaintiff would have been found 'disabled' pursuant to grid rule 201.14. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 201.14 (directing a conclusion of "disabled" for an individual closely approaching advanced age, with a high school degree, and non-transferrable skilled or semi skilled past work). To the extent Plaintiff suggests that his arguments demonstrate that Plaintiff should have been limited to sedentary work, this argument is unpersuasive for the same reasons stated in sections IV. B, C, & D of this opinion. The ALJ applied the correct grid rule based on the RFC assessed in this case and properly used it as a framework. Accordingly, I am not persuaded that remand is required.

V.     CONCLUSION

I find that Plaintiff's request for relief will be DENIED as follows:

(1)     The final decision of the Commissioner will be AFFIRMED.

(2)     Final judgment will be issued in favor of the Commissioner by separate order.

(3)     An appropriate Order will be issued.

Date: March 17, 2022                    BY THE COURT

                                        _s/William I. Arbuckle_
                                        William I. Arbuckle
                                        U.S. Magistrate Judge